Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | JOAN B. GOTTSCHALL | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 8867 | DATE | |
| CASE TITLE | Christopher Holly (IDOC #R-12805) v. Detective Boudreau, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. After reviewing the complaint pursuant to 28 U.S.C. § 1915A, the court dismisses this suit as frivolous and malicious, terminating case. Any pending motions are denied as moot.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | | |
| X | Mail AO 450 form. | | docketing deputy initials | 8 |
| | Copy to judge/magistrate judge. | | | |
| KS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



CHRISTOPHER HOLLY, )
    Plaintiff, )
)
v. ) No. 03 C 8867
) Judge Gottschall
DETECTIVE K. BOUDREAU, et al., )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Christopher Holly, a prisoner at Danville Correctional Center, filed this pro se civil action under 42 U.S.C. § 1983 against Chicago Police Department detectives, assistant Cook County state's attorneys, assistant Cook County public defenders and two "civilians," alleging they deprived him of his constitutional rights while acting under color of state law. Because Holly is a prisoner suing governmental employees, the court is required by 28 U.S.C. § 1915A, part of the Prison Litigation Reform Act (PLRA), to review the complaint prior to service and to dismiss any portion it finds frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. In determining whether the complaint states a claim upon which relief may be granted, the court accepts the allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor, *Wynn v. Southward*, 251 F.3d 588, 591-92 (7th Cir. 2001), but may *sua sponte* raise affirmative defenses, such as limitations or claim preclusion, if they are apparent from the complaint. *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002).

Holly's claims arise from the following alleged events: (1) Holly was arrested on December 3, 1998, without probable cause; (2) Holly was indicted on December 28, 1998, for the murder of Adolfo Garcia based on defendants' false testimony, before the Cook County Medical Examiner had completed his report as to the cause of Garcia's death; (3) a detective made a "supplemental arrest report" on January 26, 1999, falsely stating that Holly had been informed he was under arrest for Garcia's murder at the time of his arrest, and "altering" the report of a witness interview, changing "she killed" to "he killed," thus misrepresenting that the witness had heard a

third person say that Holly, rather than the third person herself, had admitted killing Garcia; and (4) at a plea conference on April 22, 2002, the prosecutor and Holly's public defenders failed to inform the judge of the altered police report and other exculpatory evidence. Holly alleges his public defenders told him that they had not disclosed these matters because the state would have withdrawn its offer to accept a guilty plea to second-degree murder had they done so, and that the judge, lacking this information, had told them to advise Holly to accept the offer.

The complaint makes no mention of a trial, but Holly claims the foregoing actions caused "irreparable harm to his freedom." Although not alleged in the complaint, the inference is inescapable that Holly accepted the offer and pleaded guilty. The court takes judicial notice of the Illinois Department of Corrections' internet-accessible database, which shows Holly serving sentences for second-degree murder and concealing a homicidal death.

When a person brings suit in federal court under § 1983 claiming that his or her constitutional rights were violated at some point along the path leading to a criminal conviction, it must be determined whether the plaintiff's claim, if proven, would necessarily imply the invalidity of the conviction. If so, a suit for damages caused by the conviction cannot be brought under § 1983 while the conviction stands, because a criminal conviction may only be challenged collaterally in federal court by way of a petition for habeas corpus. A claim for damages does not accrue until the conviction has been overturned, either by way of state court proceedings, executive clemency, or a federal writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477 (1994). On the other hand, if proof of plaintiff's claim would *not* necessarily imply the invalidity of the conviction, the conviction is not a bar, and the claim accrues when the plaintiff has reason to know his or her constitutional rights were violated.

Holly's first claim is for arrest without probable cause in violation of the Fourth Amendment. A two-year limitations period governs § 1983 claims arising in Illinois. *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001). Holly's Fourth Amendment claim for false arrest accrued at the time of arrest unless the unlawfulness of the arrest would necessarily imply the invalidity of his conviction. *Gauger v. Hendle*, 349 F.3d 354, 360-61 (7th Cir. 2003). As Holly does not allege that the evidence that resulted in his prosecution was obtained as a consequence of his arrest, the lawfulness of his arrest does not affect his conviction, and this claim is untimely.

2

Holly's second claim (although labelled "Claim III") is labelled "Abuse of Process." Under Illinois law, abuse of process has two elements: an ulterior motive or purpose and an act in the use of legal process not proper in the regular prosecution of the proceedings. *Kirchner v. Greene*, 294 Ill.App.3d 672, 683, 691 N.E.2d 107, 116 (1st Dist. 1998). Holly alleges neither, so we need not consider whether acts amounting to an abuse of process and committed in conspiracy with state officials can be actionable under § 1983.

Abuse of process is often confused with malicious prosecution, the commencement of legal action with malice and without probable cause. The Seventh Circuit held in *Newsome v. McCabe*, 256 F.3d 747, 750-51 (7th Cir. 2001), overruling previous decisions, that the state-law tort of malicious prosecution does not become a constitutional tort when the defendants act under color of state law, because there is no constitutional right not to be prosecuted without probable cause. *Penn v. Harris*, 296 F.3d 573, 575 (7th Cir. 2002); *Newsome*, 256 F.3d at 750-51. Holly can state a claim under § 1983 for misconduct in connection with his prosecution only by alleging the violation of a constitutional right, such as the right to a fair trial guaranteed by the Due Process Clause of the Fourteenth Amendment. *Penn*, 296 F.3d at 576; *Newsome*, 256 F.3d at 750-52.

Asserting the wrong legal theory does not doom a complaint, but none of defendants' alleged actions are actionable constitutional violations. Starting with the grand jury proceedings, Holly's claim that the state sought his indictment before the medical examiner had completed the autopsy report is frivolous. Nothing in the Constitution makes a homicide indictment dependent on the report of a medical examiner. As for the supposed "less than truthful" testimony given the grand jury, witnesses have absolute immunity from suit under § 1983 for grand jury testimony, *Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999), and prosecutors enjoy absolute immunity in presenting it. *Buckley v. Fitzsimmons*, 20 F.3d 789, 795 (7th Cir. 1994).

Turning to other acts that Holly asserts violated his right to due process, Holly alleges that on December 18, 1998, defendant Laura Forester, an assistant state's attorney, prepared a "less than truthful" report of an interview with Holly's co-defendant, Kimberly Zahnd. Holly alleges Forester quoted Zahnd as having said something Zahnd knew was false, inferring that Forester fabricated the statement. Holly also alleges that Forester reported that Zahnd recounted a fact concerning the crime Zahnd could not have known at the time she was interviewed.

3

Holly also claims that on December 8, 1998, Forester and defendant detective K. Boudreau interviewed a witness named Rhuta Sharon, and recorded in their progress report that Sharon had told them Zahnd had confessed to her that she had killed Garcia. Subsequently, defendant detective R. Trlak prepared a supplemental report on January 26, 1999, in which he altered the quotation, "she killed the old man," i.e., Garcia, to "he killed the old man," so that Zahnd was quoted as having incriminated Holly, rather than herself. Holly alleges that Sharon later told Holly's private investigator on March 30, 2001, that Zahnd had told her that Zahnd, not Holly, had killed Garcia.

The alleged alteration of the police report by Trlak's supplemental report could not in itself have violated Holly's constitutional rights, since there is no right to accurate police reports. Holly has a claim only if he has been deprived of liberty without due process of law. If Holly had been tried, and Sharon had testified that Zahnd confessed to killing Garcia, the state might have used the altered report to impeach her testimony. (As double hearsay -- an officer's report of what Sharon said Zahnd said -- it could not be used directly against Holly.) If the altered report nevertheless amounted to material evidence, which is unlikely, using it against Holly at trial could have deprived him of his right to a fair trial. *Newsome,* 256 F.3d at 752-53.

But there was no trial; Holly pleaded guilty. We have found no opinions holding that a defendant is denied due process of law if police or prosecutors knowingly confront the defendant with fabricated evidence to coerce a bargained guilty plea. But assuming such a claim were possible, not only would it require allegations much more egregious than these. A coerced plea, like an unfair trial, necessarily implies the invalidity of the resulting conviction, and under the rule of *Heck v. Humphrey* could not support a suit for damages caused by the conviction while the conviction stands.

Holly's asserted claims in connection with the plea conference are equally frivolous, if not more so. Holly alleges his counsel had given an assistant state's attorney, defendant Anna Demacopoulos, a copy of the transcript of his investigator's interview of Rhuta Sharon. Holly asserts that this "inform[ed] 'The State' of such Official Misconduct, that being said alteration," but Demacopoulos failed to investigate this "obstruction of justice."

4

Witnesses change their accounts for various reasons; Sharon's giving Holly's investigator a different account nearly two years after the police interview is hardly convincing evidence of police misconduct. Even if it were, any claim would have the same flaw as Holly's claim concerning false police reports: because the evidence was never used at trial, Holly was not denied a fair trial, and if Demacopoulos' failure to investigate the "altered" report in some way contaminated his guilty plea, his claim is premature.

Holly does not explain how the failure to disclose evidence favorable to him at the plea conference could have violated his rights, or even harmed him. Illinois Supreme Court Rule 402(d) provides that at the request of both parties, prosecution and defense counsel may meet with the trial judge to advise the judge of a proposed plea agreement and learn, in advance of the plea, whether the judge will accept the plea and sentence the defendant in accordance with its terms. If the defendant does not plead guilty or withdraws his plea, Illinois Supreme Court Rule 402(f) provides that the plea discussions are inadmissible against the defendant.

The fact that a plea conference occurred presupposes that Holly intended to plead guilty if he could be assured of receiving the agreed sentence. Holly does not allege that counsel's failure to impugn the state's case caused the judge to reject a proposed plea agreement having more favorable terms than Holly ultimately accepted. If counsel's failure to disclose exculpatory evidence led the judge to believe the state's case to be stronger than it was, and the state's plea offer correspondingly generous, that misimpression did Holly no harm. The court accordingly finds that Holly's claims are frivolous.

The court finds the complaint to be malicious as well. A malicious suit is one "intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003). Although Holly may have filed this suit not only out of spite, but to obtain the tools of civil pretrial discovery in order to pursue grounds for post-conviction relief, a second improper purpose does not make this suit less malicious. It is evident from the complaint that it was not drafted as a good-faith effort to assert legal claims Holly mistakenly believed he had, but to conceal a lack of substance by cloaking the vaguest possible allegations concerning defendants alleged actions with conclusory invective that they did them "willfully, callously, flagrantly, spitefully, and with total wreckless [sic] disregard for Plaintiff's due process rights." Holly claims a conspiracy among all defendants to convict him

5

of murder while knowing him to be innocent, without suggesting when, why, or even how they could have agreed to do so, but the complaint omits the central fact that Holly pleaded guilty.

Further, Holly was on notice that his claims were legally meritless. In *Holly v. Collins*, No. 03 C 2562, filed in this court on April 15, 2003, Holly attempted to sue Moses Collins, one of his public defenders and a defendant in this suit, alleging that actions by Collins had impaired his defense. In an order dated April 25, 2003, Judge Guzman dismissed the suit, stating that (a) any claim that Collins' acts or omissions caused Holly's conviction or increased his sentence would be barred by *Heck*, and (b) Holly could not sue Collins under § 1983 for acts or omissions in the course of his representation of Holly because Collins was not acting under color of state law, citing *Polk County v. Dodson*, 454 U.S. 312 (1981).

Holly then sought leave to file a supplemental complaint. Although he did not actually file a proposed pleading, Holly stated in his motion that he sought to name the persons subsequently sued in this action as additional defendants, asserting claims against substantially similar to those asserted here. Holly's motion stated, correctly, that a public defender who conspires with prosecutors or police to deprive a plaintiff of his constitutional rights acts under color of state law, *see Tower v. Glover*, 467 U.S. 914 (1984). But Holly did not explain what injury, independent of his conviction, had been caused by this conspiracy and why *Heck* would not consequently bar the new claims for the same reason it barred the old ones. In a brief order dated July 16, 2003, Judge Guzman denied the motion, stating that the proposed amendment would not cure the defects of the original complaint, and Holly did not appeal.

"If at first you don't succeed, try, try, again," is unacceptable litigation strategy. The prior dismissal of *Holly v. Collins* is not only an additional reason to dismiss Holly's claims against Collins.[1] It is evidence of bad faith. Told that he could not sue his public defender under § 1983, Holly discovered a conspiracy; told that this wasn't enough, he neither asked for reconsideration nor appealed, but filed a new suit, apparently hoping for a less vigilant gatekeeper.

---

[1] By the doctrine of claim preclusion, also called *res judicata*, a final judgment in defendants' favor bars a subsequent suit by the same plaintiff against them on any claim arising from the same operative facts. *Rohoserve, Inc. v. Kato Kagaku Co., Ltd.*, 121 F.3d 1027, 1034 (7th Cir. 1997). In *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002), the Seventh Circuit held that under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2), a district court may invoke the defense of claim preclusion prior to service when court records show that a prior suit by the plaintiff against the same defendant has been dismissed.

The court also notes that before bringing this action Holly had been told that the limitations period for § 1983 claims arising in Illinois is two years. *See Holly v. Anton*, No. 03 C 0682 (N.D. Ill.), order of Coar, J., dated February 24, 2003, dismissing case, *affirmed mem.*, No. 03-1653, 2004 WL 179220 (7th Cir. 2004).

Rule 11 of the Federal Rules of Civil Procedure applies to all litigants, including prisoners proceeding *pro se*, and authorizes sanctions against persons who bring suit without having made a reasonable investigation of the facts and applicable law. Courts ordinarily do not expect prisoner-plaintiffs to conduct legal research (although many can and do), but once the court has informed a plaintiff of a legal rule, he may not disregard that information unless he has good reason to believe the court was mistaken. This court will not pursue the matter further here, but Holly is warned that further frivolous suits may cost him more than the filing fee. This action is dismissed pursuant to 28 U.S.C. § 1915A as both frivolous and malicious.

IT IS SO ORDERED.

Joan B. Gottschall, Judge
United States District Court

DATED: March 19, 2004